## Meyers v. American State Bank et al.

*E. E. Petrillo*, for plaintiff.

*Brooks, Curtze & Silin*, for William D. Gordon, receiver of American State Bank.

*Craig & Blass*, for American State Bank.

Rossiter, P. J., May 9, 1934.—This is a bill in equity praying (*b*) that the defendants be restrained from further conducting their business under the name of American State Bank; (*c*) that the defendants be ordered to keep their respective accounts segregated as of October 6, 1932; (*d*) that the Sec-

retary of Banking be restrained from making any order pertaining to the future conduct of the business of American State Bank, viz., by new plan, reorganization, or ordering liquidation; (e) that the Secretary of Banking be ordered to reinstate the license under which Leonard H. Pasqualicchio conducted his business under the name of Bank of Italy; (f) that American State Bank be restrained from collecting or receiving any payments due or owing the former Bank of Italy or interfering with the property or affairs of said bank; (g) that American State Bank be ordered to transfer and deliver to Leonard H. Pasqualicchio all the property, real and personal, accounts, deposits, etc., formerly belonging to Leonard H. Pasqualicchio doing business as Bank of Italy; (h) that Leonard H. Pasqualicchio be restrained from accepting any deposits, payments, etc., owing American State Bank or interfering with the property or affairs of that bank; (j) other and further relief.

### Findings of fact

1. On October 6, 1932, and for some time prior thereto, American State Bank was a corporation organized under the laws of the State of Pennsylvania and having its place of business in the City of Erie, located at 451 West Sixteenth Street.

2. Leonard H. Pasqualicchio, on October 6, 1932, and for sometime prior thereto, was conducting a private banking business under the name of Bank of Italy, having been duly licensed under the laws of Pennsylvania, and having his place of business at 444 West Eighteenth Street, Erie, Pa.

3. Mary A. Meyers, the plaintiff, is a citizen of the City of Erie, County of Erie and State of Pennsylvania, and on October 6th was a depositor of Bank of Italy in the sum of $2,000.

4. On October 6, 1932, American State Bank of Erie, Pa., and Leonard H. Pasqualicchio, private banker, doing business as Bank of Italy, entered into an agreement, a copy of which is attached hereto, marked "Court Copy".

5. The agreement so entered into was approved by the Secretary of Banking of the Commonwealth of Pennsylvania, and American State Bank took over the assets of Bank of Italy and commenced doing business at the location formerly occupied by Bank of Italy, to wit, at 444 West Eighteenth Street, Erie, Pa.

6. Upon being informed of the facts aforesaid, the claimant, Mary A. Meyers, demanded from American State Bank a refund of the amount she had deposited with Leonard H. Pasqualicchio, formerly doing business as Bank of Italy, and that the said American State Bank refused to return the money so deposited by her.

7. American State Bank, since February 28, 1933, has been operating on a restricted basis by taking advantage of the provisions of the Act of March 8, 1933, P. L. 9.

### Conclusions of law

1. It is not necessary to restrain the bank from further conducting the business under the name of American State Bank for the reason, as we are informed and have reason to believe, that the institution attempted to be erected under the name of American State Bank is in the possession of the Secretary of Banking of the Commonwealth of Pennsylvania and in process of liquidation.

2. Both defendants should keep their respective accounts segregated as of October 6, 1932.

3. The court has no jurisdiction originally to restrain the Secretary of Bank-

ing from an order pertaining to the future conduct of the business of American State Bank as to new plan, reorganization, or ordering liquidation.

4. The court has no jurisdiction originally to order the Secretary of Banking to reinstate the license under which Leonard H. Pasqualicchio conducted his business under the name of Bank of Italy.

5. American State Bank, as an entity, should be restrained from collecting or receiving any payments due or owing the former Bank of Italy or interfering, as such entity, with the property or affairs of that bank.

6. American State Bank should be ordered to segregate all the property, real and personal, accounts, deposits, etc., formerly belonging to Leonard H. Pasqualicchio doing business as Bank of Italy.

7. If, as we are informed and believe, the Secretary of Banking has taken over American State Bank, and through it Bank of Italy, and is liquidating American State Bank, and through it Bank of Italy, the above conclusions of law are moot.

### Discussion

No testimony was taken in this case, and it is only by inquiry on our part, prompted by a desire to help depositors in distress, and admissions on the part of the defendants, that we know anything about the case at all, except the meager facts averred in the bill. Leonard Pasqualicchio filed an answer admitting the discontinuance of the business was not advertised "previously" thereto.

The skein of events which the two banks have succeeded in knotting is anything but easy to unravel; nor have the problems presented been facilitated by the pleadings, as there is nothing officially before us from which we can reach a definite conclusion, but as the defendants and their representatives have agreed that the carbon handed us is a copy of the agreement of October 6, 1932, we have accepted it with the same force and effect as though it had been attached to the bill and made part thereof. Although it is difficult from this agreement to gather just what was the intention of the parties, we are convinced that it was not the intention to create a liquidating trusteeship, for the reason that if any of the assets of the private bank remained after paying the liabilities they were to be applied to the purchase of stock in the State bank for Leonard Pasqualicchio, who was the sole owner of the private bank and would then be the sole owner of the stock in the State bank, and while there are some passages in the contract that would indicate a liquidating trusteeship, such as the 5-year limit, etc., still we are convinced that other passages are more convincing; nor do we believe that the intention was to merge the banks, for, from the whole tenor of the agreement, the private bank was to be extinguished; nor do we conclude that the agreement intended a merger, for the State bank had authority to transfer to itself, to become its absolute property, cash in excess of that required for the payment of expenses and debt, and to sell, as expeditiously as possible, all bonds, notes, and certificates of the United States, stocks, and other securities, and had the right to purchase for its own account and thereafter hold as its absolute property any obligations which are part of the transferred assets, to sell real and personal property, make deeds, leases, and bills of sale, without giving notice to the private bank or anyone else, and to become the purchaser thereof in its own right free from further accountability; to transfer assets to the private bank to be held in trust for the State bank or transferred to the State bank either in its own name or in its name as trustee or to any nominee designated by the State bank, and in general to do anything that the State bank saw fit with the transferred assets and deal with any situation arising. Clearly, then, the provisions of article VI,

article VII, article VIII, article IX, and article X were for the benefit of the State bank, and there is not a word in the agreement that we can find to the effect that the banks were to be merged and continued as a joint undertaking; although the second "whereas" provides that it is the belief of the parties that it would be to the advantage of the banks to combine their resources and consolidate their operations, yet there is not a word as to what interest the private bank shall have in such combination or operation.

This, then, leaves but one other alternative of speculation as to the intention of the parties under the contract, and that is that it was intended to be a sale absolute, for the State bank agreed to assume and pay the assumed liabilities, and the private bank agreed to pay a sum equal to all the assumed liabilities and gave its note for $245,391.29 as an earnest of that part of the agreement; and the private bank (art. I, sec. 2) further agreed to and did sell to the State bank all the transferred assets; and further (art. VI, sec. 6) it was provided that title and ownership of the transferred assets should at all times be vested in the State bank for the uses and purposes of the agreement (viz., to pay all liabilities). Article XI provided that the State bank should continue the business under the name and charter of American State Bank, and article XII that the agreement should be binding upon the successors and assigns of the State bank; and, initially, in article I, sec. 2, the private bank agreed to and did sell to the State bank all the transferred assets, and it was provided how the assets were to be applied; and article IX, sec. 2, declares that the agreement is sufficient to effect a sale, conveyance, and transfer of the legal and equitable title to the transferred assets, and the private bank agrees to give further assurances to vest in the State bank the full and complete legal and equitable title to the transferred assets and every part thereof.

This, then, we conclude, was intended to be a sale, with the provision that the liabilities of the private bank were to be paid by the State bank, if possible out of the assets of the private bank, but if not, then out of the note given by Leonard Pasqualicchio. Divested of verbiage, then, the contract simply means that the State bank agreed to take over the assets of the private bank and pay its indebtedness, and that if the assets were insufficient to pay the indebtedness they were to have recourse to a note given the bank by Leonard Pasqualicchio. If the assets exceeded the liabilities, Leonard Pasqualicchio was to have stock in the State bank to the value of the excess. Hence this was intended to be an outright sale of all the assets of the private bank to the State bank.

What the rights of the depositors of the private bank are is not raised by the pleadings. There was then a discontinuance of the business of the private bank as of October 6, 1932, without complying with the proviso of section 2 of the Act of June 19, 1911, P. L. 1060, which proviso is that, in case of discontinuance of business, notice thereof must previously have been published once a week during 30 days in one newspaper of general circulation, and the legal periodical, if any, published in the city or county where such business has been conducted or nearest adjacent county. Hence, that discontinuance was clearly illegal, for the reason that where a way is provided by statute that way must be followed: Section 13 of the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, 332; also Forst's License, 23 Pa. Superior Ct. 600. If the discontinuance of the private bank was not legal, then an attempt by the private owner of that institution to effectuate an illegal discontinuance of business was ineffectual, and this leads us to the inevitable conclusion that no matter whether the banks intended a liquidating trusteeship, a merger, or an absolute sale, their efforts in either event were a nullity, and hence the law leaves them just where they were before

those efforts were attempted, and now subject to such proceedings as the Secretary of Banking has since taken.

And now, to wit, May 9, 1934, the prothonotary is directed to enter a decree nisi in accordance with this opinion, the same to become absolute unless exceptions are filed sec. reg.                                                    From Otto Herbst, Erie, Pa.